The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good morning and welcome to the Ninth Circuit, both those of you in person and those of you by Judge Fletcher also is joining us today electronically. He and I want to welcome and thank Judge Ebel from the Tenth Circuit who is joining us, as he frequently has in the past, assisting with our work sitting by designation. We have just three cases now listed for argument, a case settled yesterday, so it lightens the load and gives us a little more flexibility today. We will take the cases in the order on the calendar. The first one, Zambi v. Kijakazi, is submitted on the brief, so the first case for argument is Hirtzel v. Kijakazi. Council, you may proceed. Good morning, Your Honors. May it please the Court, I'm Jeffrey Baird representing Ms. Hirtzel. I'd like to reserve two minutes for rebuttal as needed. This is a case where my client has extreme emotional distress from depression and anxiety, and that extreme emotional distress manifests physically in what's called somatization. Also in hallucinations later, according to Dr. Wheeler, it's the emotional distress underlying her conditions, not properly a psychotic disorder, although that's what the ALJ recognized. Now, the funny thing with the... No, you're saying that it's different than psychotic, and so you're saying because they did address psychotic, but you argue did not address emotional, that was the problem? No, the ALJ, I think, did find depression and anxiety. That's what it is. So it is consistent with Dr. Weiss's report, for example. I just may have misunderstood your argument. Thank you. So Dr. Weiss basically set the pattern that the other examining events revealed, that there's a deep underlying emotional disorder, depression, anxiety, and there's a manifestation in somatization. He found that on the MMPI-2, which is an objective test. It is statistically validated, and it is reliable. That is, you tend to get the same score when it's repeated, and he found that demonstrated somatization. Dr. Wheeler examined the claimant three times. Each one of those examinations constituted a different experiment. Each time she approached the claimant anew, and each time she made roughly similar findings, although somewhat worse at the end, accounting for deeper emotional distress. Nurse Henry commented on the emotional problems and the difficulties with depression and anxiety. She also made physical statements, and the district court took me to task on that, but this is really a mental case. The physical manifestations in pain or in things the claimant thinks she cannot do are really results of depression and anxiety writ at a deep level. She did have daily activities that were distressing to the ALJ, including a long casino visit, but she explained that was wrought with worry. She was afraid the whole time of physical conflicts that she might get in. But she did it. What's that? But she did it. She did do it. I mean, so I understand she can be afraid, but if she's willful enough to be able to do that, why can't she be willful enough to do other things? Well, as long as it doesn't require a full workday or full workweek. Well, I see. That's drawing a line that needs to be demonstrated, and the question is, if the ALJ come to lack confidence in what she describes about her own abilities, given that she can do what she wants to do and elects not to do what she doesn't want to do, why do we attribute the don't want to do that to a physical or a mental condition in this that she can't overcome? If she can overcome what she wants to overcome, why can't she overcome what she doesn't want to do? I think it's an overstatement, Your Honor, to say she can overcome things that she wants to do. We don't have any descriptions in the details of how she handled her teenagers or what she did while people were remodeling. It looks like other people were there, as there would be someone with special supervision. Again, none of these things amount to a full workday or a full workweek. She might be daring going to the casino, but that doesn't mean it was a robust experience. How long was she at the casino? See, I couldn't find that, how long... Well, you said it was robust. No, I say it's not robust. Oh, I thought you said it was, but... Well, how would I know? Yeah, well, I don't know. I mean, unless the record shows how long she was there, and that's why I asked, because I didn't catch that in the record. True. I didn't either. I apologize, Your Honor. But under Treviso, the Treviso case, the ALJ should clarify that. The ALJ should clarify how the daily activities are performed and why they would undermine other statements the claimant makes, and in particular, how they would undermine the ability to sustain regular and continuing work without special supervision. So that hasn't been developed in the record and would be a basis for a review of the case. Now, these were deeper examinations and investigations than the sporadic mental status examinations that appear during physical treatment visits, for example. Those mental status examinations don't probe in depth the way the interviews, the deeper What the doctors were really doing, Wheeler and Weiss, they got a sense of the person. They had sort of a sense of her presence, her presentation, her rambling, her emotional distress independent of words she said. There was one mental status examination, I think it was Wheeler, where she was euthymic but also saying distressing things. That is, she seemed to be in a good mood but said distressing things about suicide and other difficulties that she's had mentally. Do we have a sense as to how recently these psychological or mental symptoms have shown up? The reason I ask that is that in a fair amount of the record, she's going in for physical treatment, and the description by the doctors giving her physical treatment is that she's well-spoken, pleasant, in control, and so on. And I'm trying to figure out, was she masking her mental problems then? Did she have them then? I mean, the record appears to give me good evidence of mental problems fairly late on, but not much evidence early on. Can you help me on that? Well, the early on would be the exact examinations. I mean, Weiss found all of these things stretched out well over 12 months, so they would meet the duration requirement. And we know in 2019, July 2nd, I think, the licensed medical health treatment person found great emotional distress and said she can't do SGA, which is an issue reserved for the commissioner. But nonetheless, it indicates that clinician, having treated her, found there were serious mental problems. And we have more pain later. She needed a boot for her feet, for example, later. But all of those mental status examinations are done in service of a deeper physical examination or physical treatment, whereas the examiners, 2017, 18, 19, I think Weiss was in 16, that gives a period of years where the deepest explorations all say the same thing, depression, anxiety manifesting in the body or even in hallucinations. You know, depression, anxiety comes in different degrees. Right. And so there are all kinds of people out there working that have some depression or some anxiety. Probably everybody working today has some anxiety. And so unless we have some very residual work, it probably didn't go far enough. Well, Dr. Weiss explained the functional limitations. So did Dr. Wheeler. They said a market or severe impairments in sustaining a regular work day or sustaining a regular work week without psychological interruptions. So eight hour day is out. Forty hour week is out. Well, I'm not sure that that is true. It depends on the work environment. I mean, look at us now with and I don't know whether we can consider it today, but the prominence of working at home these days, even with eight hour days. True, but those are skilled jobs. Well, some are. I mean, they're not labor jobs. Those you got to show up for labor. But but I mean, some of the telephone monitoring jobs are done at home. I've always been. I think that's right. The vocational expert didn't locate those at step five. He provided a shelf was a shellfish cleaner or their jobs you would do at a bench sort of. And you would be sitting most of the day, but you would have to be there attentive on time, punctual and ready to roll without special supervision and lasting all day. So those are significant functional limitations set by the examining psychologists. If there's nothing else, I reserve 37 seconds. Thank you. Thank you. Excuse me. And we will hear from the commissioner. Thank you. Yes. Good morning. And may it please the court. My name is Christopher Brackett. I'm the court from the district court judgment and uphold the ALJ's decision because ultimately, the decision supported by substantial evidence. That's really what this case comes down to is this deferential standard of reviewing the factual findings that were made below. This court as an appellate body recognizes that the the findings of fact simply have to be supported by a reasonable amount of evidence. So substantial evidence contemplates that there could be multiple possible interpretations. The ALJ's interpretation here of the evidence was not unreasonable. The ALJ considered all of the medical opinions and those few that that hurts all is now challenging here. The ALJ found did not warrant significant weight. The reasons for that are that they were inconsistent with the record. Now the ALJ acknowledged that there was support for like the within Dr. Weiss's examination for his opinion, but found that the overarching theme of the claimant's treatment showed fairly mild findings. And I recognize that may I ask you a question? Yes, the ALJ. I mean, the finding here was that they didn't warrant substantial weight. That's different than another ruling that could have been made, which is that I don't consider it at all. How does how does our appeal process change or how does it impact our appeal concept if the ALJ's decisions are are there say is accepted but only with not substantial weight? If the ALJ, just so I understand the question, your honor, is the question whether the ALJ is giving partial weight to the opinion or I assume that I assume that when they accept the evidence but say it's not entitled to substantial weight, that may imply partial. And I'm assuming that that may be easier to uphold than a decision that says I reject it completely. And I'm just wondering if that's if that is an accurate way of looking at it or not. I think that's an accurate way of looking at it, your honor, because the ALJ does find significant mental limitations in Ms. Hertzel's functioning. And the ALJ does not reject the opinions outright saying they are entitled to no weight, but he does consider them in the whole body of evidence that, you know, these aren't the only medical opinions. There are the DDS reviewing physicians and psychologists who offer their opinions as well. And the ALJ considers all of these. And in keeping with this court's jurisprudence that says the ALJ must take the clinical findings and derive a succinct residual functional capacity, the ALJ then translated them into the limitations we see in the RFC. And as I pointed out, these are significant limitations that she must, for example, have no contact with members of the public, very limited contact with co-workers, only occasional and superficial contact. This is in recognition of her severe impairments. Now, to the degree that Drs. Weiss and Wheeler and Nurse Henry are describing more significant limitations, marked limitations or severe limitations, the ALJ found that those were inconsistent with the record. And the ALJ pointed to several factors for doing that, each of which is a valid reason, each of which is a reasonable conclusion to draw. For example, the ALJ considered that the claimant had numerous activities. These activities undercut the opinions in two different ways. First of all, her activities demonstrated that the way she portrayed herself to these psychologists was not fully accurate. She described herself as doing no household chores. She said that anytime she left the house, she was getting panic attacks. Yet, as we see in the record, she's going to casinos or she went, had one trip to a casino. She had a month-long trip to Arizona to see family that she then from there went to Las Vegas and then drove home to Washington State. She remodeled her bathroom with her boyfriend. She did chores such as making, preparing food and taking care of her children, two of which had significant mental and physical disorders of their own that she had to account for. What do we know about what her provision of child care amounted to? You can make the statement that she cared for her children, but we know what that constituted. Did she really take care of her children? Your Honor, I think we can draw a reasonable inference from the record that she left work initially to care for her children because she stated that she stopped working because she had a son who had a defiance disorder. She had a daughter who had a severe anxiety disorder. These were given as the reasons why she stopped her last job. We can also see in the record, I think it was Exhibit 9F, where she was saying that she was preparing them meals, anything that was a broad range. That was microwave meals sometimes. Other times, she said she was preparing formal meals. I believe at one point she was mentioning that she takes them to doctor's appointments. This is a certain degree of responsibility, the type of responsibility a parent gives their child. I think it's reasonable for the ALJ to conclude that she was taking these steps. The way she portrayed it to Dr. Weiss was that her boyfriend who was and that she just basically was cohabitating with the boyfriend and with the children. In fact, the record paints a different picture. This portrayal seemed to have influenced Dr. Weiss's conclusions. Now, I mentioned before that there were two ways that these activities undercut the opinion evidence. The other way is that they actually conflict with what the claimant was doing. This is borne out in the case Ford v. Saul. This court recognized that a claimant's activities, when they're inconsistent with an opinion, those activities serve to undercut the opinion. Now, in this case, the claimant was Dr. Weiss and Dr. Wheeler described this claimant as being very limited, that she could have minimal social interaction, that she could not sustain a workday, yet she was doing things like remodeling her bathroom. She was caring for her children. She was going on trips. At one point, she's helping out a family friend. She was complaining that she had hurt her foot. Her foot was aching her after two days of helping out a family friend. These are the kinds of activities that tend to show that Drs. Weiss and Wheeler's conclusions were not as accurate. They were not as reliable. At least that's a reasonable inference for the ALJ to draw. That's what this comes back to. The evidence just has to be of such character that the ALJ can draw a reasonable conclusion. A reasonable person looking at the record could find it adequate to support the ALJ's findings. Under substantial evidence in that case, this court reviewing those findings of fact would affirm. I note that the ALJ also considered the fact that the claimant reported to Dr. Wheeler in 2019 that she had not only daily hallucinations, but that she had had a 10-year history of them. Most of her prior treatments, she said she denied hallucinations, including her prior examinations with Dr. Wheeler, the ones from 2017 and 2018, and the 2015 examination with Dr. Weiss. On page 631 in the record, her examination with Nurse Henry formed the basis of Nurse Henry's opinion. She denied hallucinations in each of those instances, yet later is claiming that she does have not only hallucinations, but a 10-year history of them. I see my time is starting to wind down. I'd be remiss if I didn't touch on remedy before as my last opportunity to talk. The opposing counsel does ask as a remedy for payment of benefits. This case is not evidence going both ways. We need a finder of fact to resolve that evidence. Simply crediting some of the evidence while not addressing the other evidence would amount to reweighing and the court making its own findings of fact, which is not how an appellate body should be operating. That would be something for an ALJ to do with the record in front of him or her. But the commissioner maintains that the ALJ's decision has sufficient support from substantial evidence and that the court should therefore affirm the district court judgment. If there's no further questions from the court, then I will... Appears not. Thank you. All right. Thank you very much for your time today and thank you. Thank you. Mr. Baird. A couple of things. My opponent said she worked on remodeling for two days, but then she had to stop due to pain and exhaustion and she couldn't work five days. She couldn't sustain a five-day week, which is exactly what Dr. Weiss and Dr. Wheeler said. The long day of eight hours, the long week of five days, that's what she can't do. Also, my opponent seems to think this is one wily deceiver. She gives some false information to Dr. Weiss and he's tricked. He gave her an MMPI. It said this is somatic. He examined her. He caught the professional subjective judgments about her animal sense, how it felt to be with her, rambling, and it was the totality of the experience with her and the details he laid out that supported can't work a full day, can't work a full week, and will need some kind of special supervision to do work. And the special supervision, taking care of attendance, attention, punctuality. If there's any questions, I'll answer. Appears not. Thank you for the argument. Thank you very much. Counsel, for your helpful argument, the case just argued is submitted.
judges: Ebel, FLETCHER, CLIFTON